The following constitutes
the order of the court. Signed October 18, 2012

Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re JOSE A. PECHO, SR.,<br><br>Debtor. | Case No. 11-49052<br><br>Chapter 13<br><br>**MEMORANDUM DECISION RE TRUSTEE'S OBJECTION TO CONFIRMATION** |

**A. Introduction**

Jose A. Pecho, Sr. ("debtor") filed this chapter 13 case on August 24, 2011. This case was filed approximately two months after debtor received a discharge in his prior chapter 7 case.[1] This chapter 13 case is therefore colloquially known as a chapter 20 case and Bankruptcy Code § 1328(f) precludes the granting of a

---

[1] See Chapter 7 case no. 11-42581 filed on March 10, 2011 and discharge order entered on June 20, 2011 at docket no. 20.

-1-

discharge in this case.[2]

The issue before the court is whether debtor's plan can be confirmed over the trustee's objection which is based on the fact that the plan proposes to strip two wholly unsecured liens.

**B. Jurisdiction**

This court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (L), (O).

**C. Background**

**1. Debtor's Schedules**

On schedule A, debtor listed his primary residence with a value of $725,000. Docket no. 8. On amended schedule D, debtor stated the residence was encumbered with a senior lien securing a debt of $1.1 million owed to Marix Servicing ("Marix") and two junior liens securing debts to Teresita Jiminez ("Jiminez") of $300,000 and $10,000. Docket no. 29.

**2. Debtor's Chapter 13 Plans**

Debtor has filed several versions of his chapter 13 plan. Docket nos. 10, 13, 14, 45, 55, 59, 63, 65. The first version of the plan was filed on September 7, 2011 (the "original plan"). Docket no. 10. As relevant to this decision regarding Jiminez's

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all Bankruptcy Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all Civil Rule references are to the Federal Rules of Civil Procedure.

*11-49052 Decis.Conf.Obj.* -2-

liens, the original plan and each subsequent version, state that debtor will treat Jiminez as unsecured and she will receive nothing because the residence is worth less than the senior lien of Marix.

The current version of the plan (docket no. 65), calls for payments of $500 per month for the first 12 months of the plan, and $3,555 per month for the remaining 48 months; pre-confirmation adequate protection payments for a car loan; cure of a $7,000 arrearage to a homeowners' association; payment of priority claims totaling approximately $10,000; surrender of a timeshare; and direct payments of $3,900 per month to Marix and of $70 per month to the homeowners' association. The plan provides that the $3,900 per month to be paid to Marix is a proposed loan modification, and if Marix does not agree to it, debtor will either surrender the residence or propose a plan that pays according to contract terms. The plan also provides that the trustee will not make any payments on Marix's pre-petition arrears pending this decision by Marix.[3]

On September 13, 2011, debtor served all creditors with a copy of the original plan and gave all creditors notice that parties had 28 days to file an objection to confirmation. Docket no. 11. This notice also warned that in the absence of an objection, the plan may be confirmed and "you may be bound by the provisions of the confirmed plan."

Debtor served all creditors with notice and opportunity for

---

[3] After Marix objected to a prior version of the plan, debtor amended his plan to provide this treatment and Marix withdrew its objection. Docket nos. 42, 45, 49.

*11-49052 Decis.Conf.Obj.* -3-

a hearing regarding the second amended plan. Docket no. 15. This notice stated that parties had 21 days from September 23, 2011 to file a written objection to confirmation of this plan. Jiminez did not file an objection to confirmation.

### 3. Status of the Confirmation Process

The meeting of creditors was held and concluded on October 27, 2011 and the trustee gave notice to all creditors on October 28, 2011, that a confirmation hearing would be held on January 17, 2012. Docket no. 33. The confirmation hearing was thereafter continued several times to June 19, 2012 at which point the matter was taken under submission. Both the trustee and debtor filed supplemental briefs regarding the chapter 20 lien stripping issue. Docket nos. 47, 50, 53.

### 4. Debtor's Motions to Value

On October 4, 2011, debtor filed motions to value regarding Jiminez's second and third priority liens on the residence. Docket nos. 19 and 20. Jiminez was properly served with each motion and has not filed an objection to the relief requested in these motions. On November 11, 2011, debtor requested default orders on these motions. Docket nos. 39, 40. Nonetheless, orders have not been entered pending resolution of the trustee's objection to confirmation on the chapter 20 lien stripping issue.

### 5. The Parties' Positions re Confirmation

On October 26, 2011, the trustee filed an objection to confirmation and request for dismissal. Docket no. 30. As relevant now, the trustee objected to confirmation on the grounds that debtor could not strip the Jiminez liens because he was not entitled to a discharge and had thus violated the good faith

*11-49052 Decis.Conf.Obj.*                -4-

Case: 11-49052   Doc# 77   Filed: 10/18/12   Entered: 10/18/12 16:22:11   Page 4 of 10

provisions in § 1325(a)(3) and § 1325(a)(7).

The trustee's objection stated: "Debtor's lack of good faith is evident in Debtor's filing for, and receiving of (sic), a Chapter 7 Discharge months prior to filing the instant Chapter 13 case." Docket no. 30, page 8. The trustee did not contend that any other facts supported a finding of lack of good faith; her sole premise was her view that lien stripping in the chapter 20 context is impermissible because of § 1325(a)(5)(B) and thus a lack of good faith was "implicated."

The trustee's supplemental briefs amplified these points but did not materially change the thrust of her argument that lien stripping is not possible without a discharge and Jiminez's silence may not be deemed acceptance because of the perceived importance of Jiminez's lien rights. The trustee relies primarily on the reasoning in In re Victorio, 454 B.R. 759 (Bankr. S. D. Cal. 2011).

In support of confirmation, debtor argues that (1) because the value of the residence is less than the debt owed to the first priority lien holder, Jiminez has only unsecured claims so § 1322(b)(2), § 1328(f)(1) and § 1325(a)(5)(B)(i)(I) are not applicable; (2) Jiminez's *in rem* rights are to be satisfied by debtor's complete performance under the plan; (3) § 1325(a)(4) and § 1325(b)(1) do not require a discharge, only that a debtor must pay the value of non-exempt assets and all disposable income; (4) upon completion of his plan, his unsecured debt will be eliminated without the need for a second discharge. Debtor argues that this construct respects the holdings of Dewsnup v. Timm, 502 U.S. 410 (1992), Johnson v. Home State Bank, 501 U.S.

78 (1991) and <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324 (1993) and is in accord with <u>In re Zimmer</u>, 313 F.3d 1220 (9th Cir. 2002).

**D. Discussion**

The trustee's objection raises one essential issue: may Jiminez's junior liens be stripped when the debtor is not entitled to a discharge.

**1. Lien Stripping Does Not Depend on Discharge**

The arguments for and against permitting lien stripping in the chapter 20 context are well established. The competing views are explained in <u>In re Victorio</u>, 454 B.R. 759 (Bankr. S.D. Cal. 2011), aff'd 470 B.R. 545 (S.D. Cal. 2012), <u>In re Gerardin</u>, 447 B.R. 342 (Bankr. S.D. Fla. 2011) (against allowing it), and <u>In re Tran</u>, 431 B.R. 230 (Bankr. N.D. Cal. 2010), <u>In re Hill</u>, 440 B.R. 176 (Bankr. S.D. Cal. 2010), <u>In re Okosisi</u>, 451 B.R. 90 (Bankr. D. Nev. 2011), <u>In re Scantling</u>, 2012 WL 593218 (Bankr. M.D. Fla. 2011), and <u>In re Fisette</u>, 455 B.R. 177 (8th Cir. BAP 2011) (in favor of allowing it).

For the reasons explained in the court's October 15, 2012 Memorandum Decision in the case of Frances Renee North, 11-72843, docket no. 32, this court now joins the latter group of cases and endorses the reasoning of <u>Tran</u> and <u>Hill</u> and the cases reaching this outcome.

For the sake of brevity, the court will not repeat its reasoning here. The court finds that on the undisputed facts and the record in this case, Jiminez does not have an "allowed secured claim" and the fact that debtor is not entitled to a

*11-49052 Decis.Conf.Obj.* -6-

discharge does not preclude debtor from avoiding Jiminez's junior liens and treating Jiminez as an unsecured claim holder in this case. Upon completion of the plan, this lien stripping will be permanent. In addition, if Jiminez is viewed as having an "allowed secured claim," Jiminez's silence is deemed acceptance of the plan's treatment under § 1325(a)(5)(A). Accordingly, the trustee's objection to confirmation based on this ground is overruled.

**2. Feasibility Issues are Unresolved**

According to § 1325(a)(6), the court "shall confirm a plan" if the debtor "will be able to make all payments under the plan and to comply with the plan." On August 30, 2012, Marix filed a motion for relief from stay, seeking permission to complete its foreclosure on debtor's residence. Docket no. 72. The motion stated that debtor was in default for ten months of post-petition payments (approximately $84,000) and for thirty months of pre-petition payments (approximately $232,000). Debtor did not oppose this motion and on September 28, 2012, this court entered an order granting relief from stay to Marix. Docket no. 75.

The entry of the relief from stay order raises an issue regarding the feasibility of debtor's plan. Marix has apparently rejected the loan modification proposed by debtor in his plan. Debtor has yet to act on the alternatives proposed there - i.e., he has not filed an amended plan providing for contractual payment terms and payment of the arrearage, and it is unclear whether he has surrendered the residence. On the current state of the record, the court is not able to find that the requirements of § 1325(a)(6) have been met. Until this core feasibility issue

is resolved, the court will not be in a position to confirm debtor's plan.

### 3. Good Faith Issues

Good faith is always a consideration in the chapter 13 confirmation context and the court has an independent duty to review a chapter 13 plan to ensure it complies with the Bankruptcy Code. United Student Aid Funds v. Espinosa, 130 S. Ct. 1367 (2010). The court may not confirm a plan without a finding that the plan has been "proposed in good faith and not by any means forbidden by law." § 1325(a)(3). The court must also find that the action of the debtor in filing the petition was in good faith. § 1325(a)(7). The court is guided here by In re Warren, 89 B.R. 87, 93-95 (9th Cir. BAP 1988) (court should not confirm plans that are in essence veiled chapter 7 cases; listing good faith factors), and In re Goeb, 675 F.2d 1386 (9th Cir. 1982) (court must inquire whether debtor has misrepresented facts in plan, unfairly manipulated the Code, or otherwise proposed plan in an inequitable manner; though it may consider substantiality of proposed repayment, court must make its good-faith determination in light of all militating factors).

On this record, the court sees no basis to question the debtor's good faith and finds that § 1325(a)(3) and § 1325(a)(7) are satisfied.

**E. Conclusion**

Based on the foregoing, the trustee's objection to confirmation on the chapter 20 grounds is overruled and the court requests the trustee to submit an order in conformity with this

*11-49052 Decis.Conf.Obj.* -8-

decision.

The court can not find that the plan is feasible until debtor has obtained orders on the motions to avoid the Jiminez liens and addressed the feasibility concerns raised by the fact that relief from stay has been granted to Marix. Accordingly, debtor must upload appropriate orders regarding Jiminez's liens and file an amended plan within 14 days of the date of this Memorandum Decision. If this is not done, the trustee is requested to submit an order dismissing this case immediately after this time has run.

\* \* \* END OF MEMORANDUM DECISION \* \* \*

11-49052 Decis.Conf.Obj.                -9-

Case: 11-49052   Doc# 77   Filed: 10/18/12   Entered: 10/18/12 16:22:11   Page 9 of 10

**Court service list**

Trustee
Martha G. Bronitsky
P.O. Box 9077
Pleasanton, CA 94566

Debtor
Jose A. Pecho, Sr.
2977 Ygnacio Valley Road # 103
Walnut Creek, CA 94598

Debtor's Atty
David Ashley Smyth
Smyth Law Offices
1990 N California Blvd. #830
Walnut Creek, CA 94596

EMC/Marix Atty
JaVonne M. Phillips
Christelle N. Ramseyer
McCarthy & Holthus, LLP
1770 Fourth Avenue
San Diego, CA 92101

Teresita Jiminez
380 South Main St.
Milpitas, CA 95035

All ecf participants

*11-49052 Decis.Conf.Obj.* -10-